Walter K. Pyle (Bar No. 98213)
2039 Shattuck Avenue, Suite 202
Berkeley, CA  94704-1116
(510) 849-4424
*Attorney for Petitioner*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID M. McDONOUGH,

    *Petitioner,*

v.

JAMES A. YATES, Warden,

    *Respondent.*

No. **C 07-2469 MMC**

**PETITIONER'S TRAVERSE**

## Nature of the Case

California's 1977 Determinate Sentencing Law originally allowed "goodtime/worktime" credits against a prisoner's sentence of up to 50% of the sentence ["day-for-day" credits].  However, the California Legislature amended the law effective September 21, 1994, which limited sentence credits on certain "violent" offenses to no more than 15%.   See Cal. Penal Code § 2933.1.

Petitioner pled guilty to five offenses against Brandon Doe (Counts 1, 2, 3, 4, and 7) which occurred sometime "between September 28, 1990 and September 27, 1995."  Petitioner's offenses would qualify under the 15% limitation if they were committed after the effective date of the statute, but there was nothing in the record which suggested exactly when the offenses occurred, and the California  Court of Appeal concluded that the State had not proved the "requisite fact" that the offenses occurred after the statute was enacted.  See Slip Opinion, p. A-11 of Appendix to Petitioner's Points & Authorities in Support of Habeas Corpus Petition, filed May 8, 2007.

Petitioner was sentenced to 6 years on Count 1, and was given consecutive sentences of 2 years each on Counts 2, 3, and 4, for a total of 12 years, plus 6 years concurrent on Count 7.  He was also given consecutive sentences of 8 years each on the offenses committed against Victoria Doe at a later date (Counts 5 and 6), for an additional 16 years, making the total sentence 28 years.  (RT 34; CT 100.) He contends he is entitled to 50% credit on the 12 years attributable to Counts 1, 2, 3 and 4, instead of the 15% limit imposed by the 1994 statute.[1]

The California Court of Appeal recognized that the statute *itself* [in subsection (d)] said the 15% limit was applicable only to offenses committed after the effective date of the statute, but it refused to apply such a "literal interpretation," apparently believing that the Legislature intended to impose longer sentences for violent offenses.   See Slip Opinion at p. A-16.  Rather, said the California court, if there were also other offenses of conviction that occurred after the effective date of the new law, then *all* offenses of conviction are limited to 15% credits.  Slip Opinion at p. A-16.

**Regardless Whether a Sentence Is a Single "Indivisible" Sentence for Purposes of State Law, the *Ex Post Facto* Clause Applies to the Punishment for Specific Crimes, Not the Aggregate Sentence.**

The State contends, in accordance with the California Court of Appeal's opinion, that periods of presentence[2] confinement are "indivisible" for the purpose of calculating custody credits.  State's Points & Authorities in Support

---

[1] He also contends he should receive 50% credits on the 6-year sentence on Count 7.  However, this is probably a moot point, since those 6 years were concurrent, which means that even if he were given only 15% credits on that count, he would have fully served that sentence after 5.1 years, i.e., that concurrent sentence would have been served *before* the sentences were fully served on Counts 1, 2, 3, and 4 (50% of 12 years).

[2] Petitioner seeks a writ from this court (see paragraph (c), p. 4 of habeas petition) which would vacate the 15% limit on *both* pre-and post-sentence credits on Counts 1, 2, 3, 4, and 7, as Judge Poche ordered in the trial court (CT 100 ["The Limitation on Sentence Credits in Penal Code 2933.1, which were enacted in 1994 cannot be applied to Counts 1, 2, 3, 4, and 7."].)

of Answer, p. 5. Even if that were true as a matter of State law,[3] it is irrelevant to the application of the *Ex Post Facto* Clause, which is the supreme law of the land, as interpreted under federal law. "Whether a retrospective state criminal statute ameliorates or worsens conditions imposed by its predecessor is a federal question." Weaver v. Graham, 450 U. S. 24, 34 (1981).

The *Ex Post Facto* Clause applies to *crimes*, not to the overall sentence the defendant receives. Justice Chase's well-known opinion in Calder v. Bull, 3 Dall. 386, 390 (1798) makes clear that "[e]very law that makes an *action* done before the passing of the law, . . . or inflicts a greater punishment, than the law annexed to the *crime* when committed," offends the *Ex Post Facto* Clause. [Italics added.]

Justice Stone in his opinion for the court in Beazell v. Ohio, 269 U.S. 167 (1925) explained that the *Ex Post Facto* Clause rests upon the notion that laws which purport to aggravate an *offense* "are harsh and oppressive," and that the criminal quality attributable to an *act*, including the amount of punishment imposed for its commission, "should not be altered by legislative enactment, after the fact, to the disadvantage of the accused." Id. at 170. The idea that a legislature may not increase the punishment for crimes after the fact is faithful

---

[3] The California Court of Appeal made this analysis based on cases where all the defendant's offenses were committed after the effective date of the act, and the courts had used principles of statutory construction in light of Cal. Pen Code § 1170.1(a) because the courts found subsection (a) of § 2933.1 to be ambiguous. See In re Reeves (2005) 35 Cal.4th 765, citing People v. Ramos (1996 ) 50 Cal.App.4th 810. There have been no reported California cases interpreting the relevant statute when, as here, some of the offenses took place before the statute was enacted, nor are there any California cases which suggest that subsection (d) of the statute, which says the credit limitation is applicable only to offenses committed *after* the effective date of the act, is in any way ambiguous. In addition, § 2833.1(d) was enacted after § 1170.1(a), the Code section which describes how to calculate sentences under the Determinate Sentencing Law, and any conflict between the two statutes would be resolved in favor of the most recent expression of the California Legislature, i.e., the Legislature's statement that the 15% credit limit applies only to offenses committed after the effective date of the statute.

to the Framers' original intent: "Legislatures may not retroactively alter the definition of *crimes* or increase the punishment for criminal *acts*." Collins v. Youngblood, 497 U.S. 37, 43 (1990) [Italics added].

**It is Not "Absurd" that a Longer Sentence Also Results in More Credits Than A Shorter Sentence.  Nor Does the *Ex Post Facto* Clause Exempt Longer Sentences From Its Application.**

  The State court also thought it "absurd" that a defendant would receive more credits for being convicted of more crimes, see Slip Opn., p. A-15, and the State repeats this argument in its response.  State's Memorandum in Support of Answer, p. 6.  But that is always the result of sentence credits.  A person who is sentenced to 10 years for 2 crimes will receive twice the sentence credits as one sentenced to 5 years for 1 crime, but that result is not absurd at all (any defendant would readily opt for the 5-year sentence, even if he received fewer credits); it is simply how credits work.  Nor is this argument relevant to *ex post facto* principles.

**All Credits, Even Under California's New Law Limiting Sentence Credits, Are Calculated for, and Applied to, Specific Counts of Conviction.  Petitioner Was Deprived of Sentence Credits Applicable to the Earlier Offenses Against Brandon Doe; He Was Not Given a Longer Sentence for the Later Offenses Against Victoria Doe.**

  The primary thrust of the State's response seems to be that petitioner was really being sentenced as a recidivist, and the longer sentence on the offenses against Brandon Doe is because he is a "repeat offender."  State's Memorandum in Support of Answer, p. 7.

  The idea that a person with no prior convictions is a "recidivist" is a novel theory, to say the least.  We had thought that an increased punishment for a "recidivist" resulted because the punishment imposed for a prior conviction was deemed insufficient to set him on the straight and narrow,

4

*Traverse*

which required a more harsh punishment for a second conviction. Compare 18 U.S.C. § 924 (e)(1) [Armed Career Criminal Act of 1984].

Nevertheless, it is clear that petitioner was not punished because of his status, nor did his sentence for the offenses against Victoria Doe increase because he was a recidivist, but rather his effective sentence for *specific offenses* against Brandon Doe was increased after those offenses had been committed. Each of the counts of conviction in question carried a specific sentence, and credits are counted against that specific sentence. The constitutional injustice for Mr. McDonough is that although the law allowed credits of 50% at the time the offenses against Brandon Doe were committed, the California Court of Appeal says he will now only receive 15% credit on each of those counts of conviction.

There is no question that when it comes time to compute credits, the computation applies to each specific offense. Thus petitioner was sentenced to a term of six years on Count 1. At the time he petitioner committed the offense of conviction, the law said he was entitled to 50% [day-for-day, or "halftime"] credits, meaning he would effectively serve a total of approximately 3 years for that offense.[4] But the California Court of Appeal now says it is lawful to incarcerate him for 5.1 years for that offense. On Counts 2, 3, and 4, the effective term of his sentence, after credits, was 1 year on each count, but the California Court of Appeal says he will now have to serve 1.7 years on each count. At the time the five counts offenses against Brandon Doe were committed, petitioner's effective sentence for those offenses would have been approximately 6 years, but after the Court of Appeal's ruling, he will have to actually serve 10.2 years. Whether or not his sentence is an "aggregate"

---

[4] The time is approximate because the full 50% credits do not kick in until the prisoner qualifies for a "program." This fact, however, does not affect the legal issues here.

sentence for state law purposes, as the State contends, it is clear that his punishment for each *specific* offense in question is greater than it was at the time the offense was committed. Under federal law, this is an illegal sentence. Indeed, the existence of the *Ex Post Facto* Clause is undoubtedly the reason the California Legislature provided in subdivision (d) of the statute that the sentence credit limitation applied only to offenses committed after enactment of the new law.

The Supreme Court has made clear that *any* law that increases the amount of punishment after the criminal act in question has been committed offends the *Ex Post Facto* Clause, even if it increases punishment indirectly, as by decreasing sentence credits.

In <u>Weaver v. Graham</u>, 450 U.S 24 (1981) the Florida Legislature repealed a statute that gave good behavior credits ["gain time"] *after* the defendant had committed his offense. The State argued that this was permissible because credits were not part of the sentence, and because the loss of credits applied prospectively only. <u>Id</u>. at 31-32. The Supreme Court rejected these arguments, saying that the test of an *ex post facto* violation is not whether the "prospect" of good behavior credit was in some technical sense part of the sentence. The law violated the *Ex Post Facto* Clause because credits are one determinant of the actual sentence that would be served, and the prisoner's "effective sentence is altered once this determinant is changed." <u>Id</u>. at 32. The new statute, like the new California statute here, substantially altered the consequences attached to a crime (an "event," as <u>Weaver</u> puts it at p. 29) already completed, changing the quantum of punishment to petitioner's disadvantage.

In <u>Miller v. Florida</u>, 482 U.S. 423 (1987) the Florida Legislature increased the "presumptive" sentencing range for the defendant's crime after he had

committed the offense.  The Supreme Court held that the increased "quantum of punishment" violated the *Ex Post Facto* Clause.  Id. at 433-434.

In Lynce v. Mathis 519 U.S. 433 (1997) the court explained that reductions in sentence credits implicate the *Ex Post Facto* Clause because credits are one determinant of the term of imprisonment, and the defendant's "effective sentence" is altered once this determinant is changed.  Id. at 445 (citing Weaver).

**The State, as the Party Seeking to Deprive the Defendant of His Liberty, Bears the Burden of Justifying Beyond a Reasonable Doubt the Punishment Imposed.**

Finally, the State argues that the State is entitled to increase the punishment against petitioner unless petitioner proves that the offenses took place before the enactment of the new statute.  State's Points & Authorities in Support of Answer, p. 6.

The State has it backwards.  When the government seeks to deprive a citizen of his liberty, it is the government who bears the burden of proof as to the facts which will permit the government to deprive one of his liberty.

The law recognizes that in litigation there is always a margin of error, representing error in factfinding.  When one party faces loss of liberty, due process reduces that margin of error by placing the burden of proof on the other party to prove guilt beyond a reasonable doubt.  In re Winship (1970) 397 U.S. 358, 364.  This means the government always bears the burden of proof in a criminal case.  McFarland v. American Sugar Co., 241 U.S. 79, 86 (1916) [due process prohibits a legislature from declaring an individual presumptively guilty of a crime]; Morrison v. California, 291 U.S. 82, 92 (1934) [law under which a defendant charged

with being an alien has burden of proving citizenship violates due process of law]; Tot v. United States, 319 U.S. 463, 469 (1943) [due process prohibits placing the burden of going forward with the evidence on the defendant]; Sullivan v. Louisiana, 508 U.S. 275, 277-278 [prosecution bears burden of proving all elements of the offense charged]; Blakely v. Washington, 542 U.S. 296, 304 (2004) [court cannot make factual findings which would result in a loss of liberty beyond that which it could impose solely because of the facts admitted by the defendant]; O'Neal v. McAninch, 513 U.S. 432, 435 (1995) [the State bears the risk of error; if the effect of an error is not certain, the uncertain judge should treat the error as one harmful to the outcome of the case].

Moreover, the rule of lenity requires that any ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity. United States v. Bass, 404 U.S. 336, 347 (1971). This principle advances the policy that a fair warning" should be given so the common world will understand what the law intends to do if a certain line is passed. Id. at 348. The policy of "fair warning" was the very same policy the Framers sought to advance by enacting the *Ex Post Facto* Clause. Weaver v. Graham, supra 450 U.S. at 28.

### Conclusion

The "critical question" in *ex post facto* analysis, Weaver tells us, is "whether the law changes the legal consequence of acts completed before its effective date." (Id., 450 U.S., at p. 31.) The California appellate court's application of California Penal Code § 2933.1 to the offenses committed against Brandon Doe clearly did so.

The California Legislature took pains to avoid *ex post facto* implications by declaring that the new statute only applied to offenses committed after the

effective date of the statute, and the trial court here did the same when it sentenced petitioner without the credit limits on the earlier offenses. (CT 100.) The California Court of Appeal, however, interpreted the law in a way—an unreasonable way—that violated the *Ex Post Facto* Clause. Under that interpretation, the new law changes the legal consequences of petitioner's crimes in Counts 1, 2, 3, 4, and 7 after the criminal act were committed, by increasing the total period of prison confinement for these particular crimes by approximately 4 years.

The decision of the California Court of Appeal is an unreasonable application of federal law as declared by cases such as Weaver v. Graham. This court should grant the writ and order respondent to grant petitioner all the credits permitted to him prior to 1994 as to Counts 1, 2, 3, 4, and 7.

Respectfully submitted,

**/s/ Walter K. Pyle**

Walter K. Pyle
*Attorney for Petitioner*